UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN JOHNSON, JR.,

        Petitioner,

v.

HUGH WOLFENBARGER,

        Respondent.

Case No. 2:08-cv-12076

HONORABLE VICTORIA A. ROBERTS

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

Petitioner Stephen Johnson, Jr. is in the custody of the Michigan Department of Corrections under authority of a January 22, 2003 Wayne County Circuit Court Judgment of Sentence.  Petitioner was convicted at a bench trial of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and felony firearm, MCL 750.227b.

The Court sentenced him as a habitual offender, fourth offense, to 25 to 50 years in prison for the assault with intent to murder conviction, 2 to 5 years for the felon in possession conviction, and 2 years for the felony firearm conviction, consecutive to the other sentences.

In this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, Petitioner raises five claims: (1) Petitioner's Sixth Amendment right to counsel was denied by ineffective assistance of trial counsel; (2) the state trial court denied his right to a defense by excluding an affidavit signed by Petitioner's non-testifying co-defendant; (3) prosecutorial misconduct;

(4) his sentence is unconstitutional under *Blakely v. Washington*; and (5) ineffective assistance of appellate counsel, in violation of the Sixth Amendment.

Respondent says that Petitioner's second and fourth habeas claims, along with part of his first habeas claim, are procedurally defaulted because Petitioner failed to assert the claims on direct appeal and the Michigan courts denied review of those claims on that basis. Respondent also says that Petitioner's habeas claims are without merit.

The Court finds that Petitioner fails to establish a right to habeas relief.

## I. FACTS AND PROCEDURAL HISTORY

On May 27, 2002, the complainant, Valerie Byrd, was shot in the back outside her house. The complainant and her daughter claimed that the Petitioner shot Valerie Byrd and that codefendant Gail Kimbrough-Johnson, Petitioner's wife, handed Petitioner the gun.

The Petitioner and Kimbrough-Johnson waived their rights to a jury trial and went to trial before the Honorable Maggie W. Drake in Wayne County Circuit Court. The Court had difficulty scheduling a jury trial and Petitioner's counsel advised his client that it was better to have a bench trial before Judge Drake than to have a jury trial before another judge. The record also reflects that the parties originally contemplated a trial of two and one-half days but revised this estimate to only a few hours. At the start of the bench trial, Petitioner's trial counsel stipulated to the admission of an exhibit documenting Petitioner's prior conviction for purposes of the felon in possession charge. Defense trial counsel also waived opening statement and the prosecution's production of two police witnesses.

Valerie Byrd, and her daughter, Shira Byrd, testified. They said that Petitioner had had a long-term relationship with the Valerie Byrd. Valerie Byrd testified that the Petitioner

came to her house at her request on the evening of May 27, 2002, and intervened in a fight between Valerie Byrd and her niece.  Valerie and Shira Byrd testified that, afterwards, the Petitioner sat outside the house in his car, with Gail Kimbrough-Johnson in the passenger seat.  The Byrds testified that they approached the car on the driver's side, along with Shira's friend Candy Justice, and argued with Petitioner and Kimbrough-Johnson about another car and about Petitioner's actions in bringing Kimbrough-Johnson to the Byrd residence.  Valerie Byrd testified that at some point during the argument, Petitioner told Kimbrough-Johnson to "give me my shit," meaning his gun.  Valerie Byrd and Shira Byrd each testified that they saw Kimbrough-Johnson give a gun to Petitioner.  Valerie Byrd testified that she slapped the Petitioner and that she then heard him say, "I'm going to do this bitch."  Valerie Byrd testified that she turned away from the Petitioner's car and felt a shot in her back.  Shira Byrd testified that she heard and saw the same events.  Both Byrds testified that they heard two more shots fired from the car as it sped away.  Shira testified that these shots were fired in the air.

Petitioner testified that he waited in a car outside the victim's house because he planned to give Valerie Byrd's niece and her children a ride, after the  confrontation between Valerie and the niece.  Petitioner testified that Valerie Byrd, Shira and Shira's friend, Candy Justice, came and surrounded his car.  According to Petitioner, Valerie Byrd was visibly intoxicated and had a red baseball bat in her hand.  Shira Byrd had a shiny object that appeared to be a knife.  Petitioner testified that the Byrds and Justice yelled and screamed at Petitioner and his wife, and tried to reach through the window to Kimbrough-Johnson.  They then turned away from the car and toward the house, when he heard Shira Byrd say "[t]he bitch" had a

3

gun.  The Petitioner testified that he turned and saw a gun in his wife's hand.  He said "No,"
and grabbed Kimbrough-Johnson's wrist.  The gun discharged once.  He did not see if the
gun hit anyone, but saw the victim fall to the ground.  Petitioner drove away.  On cross-
examination Petitioner testified that he did not know that Kimbrough-Johnson had a gun.
Petitioner said that Kimbrough-Johnson pointed the gun in the direction of the car window
and that by seizing her wrist he was trying to stop Kimbrough-Johnson from firing in the
direction of Valerie Byrd.

Petitioner's counsel attempted to call Kimbrough-Johnson to the stand.  Kimbrough-
Johnson's counsel stated that he had talked with Kimbrough-Johnson and advised her not to
testify: "I think especially the direction the case has gone in, I don't think she should.  I have
advised her not to testify.  She told me she's going to take her fifth amendment . . .."
Kimbrough-Johnson confirmed that she invoked her Fifth Amendment right not to testify.
Petitioner's counsel then produced an affidavit handwritten and executed by Kimbrough-
Johnson about five months earlier and sought its admission as an admission against penal
interest.  The trial court denied the request.  The defense rested.

The trial court found the defendant guilty on all counts.  The court also found
Kimbrough-Johnson guilty as an aider and abettor for handing the gun to the Petitioner.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an
unpublished *per curiam* opinion.  *People v. Johnson*, No. 246925, 2004 WL 1737685 (Mich.
App., Aug. 3, 2004).  The Michigan Supreme Court denied leave to appeal on April 26, 2005.
*People v. Johnson*, 472 Mich. 894 (Table) (April 26, 2005).

Petitioner filed a motion for relief from judgment under subchapter 6.500 of the Michigan Rules of Court.  The motion for relief from judgment asserted the claims that currently form the basis of the second and fourth claims for habeas relief, that the state trial court denied Petitioner's right to a defense by excluding the Kimbrough-Johnson affidavit, and that Petitioner's sentence was unconstitutional under *Blakely v. Washington,* along with additional claims of ineffective assistance of trial counsel that form part of the basis for Petitioner's first claim for habeas relief.  The trial court denied Petitioner's motion in an order dated September 6, 2006.  In the accompanying opinion, the trial court stated that the Petitioner failed to meet the burden imposed by MCR 6.508(D)(3)(b), to show either good cause for failure to raise the issues at trial or on direct appeal, or actual prejudice resulting from the alleged errors.  The court also held that Petitioner's claims failed on the merits. Both the Michigan Supreme Court and the Michigan Court of Appeals denied leave to appeal on the grounds that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

## II. STANDARD

The Court reviews the claims in the Petition under the standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, the Court may grant relief with respect to any claim that was adjudicated on the merits in state court proceedings only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

## III. ANALYSIS

Respondent says that certain claims in the Petition were procedurally defaulted in state court.  Under the doctrine of procedural default, when a state court declines to reach claims because a habeas petitioner failed to present those claims in accordance with a state's procedural rules, a federal habeas court is barred from granting relief on those claims absent a showing of cause for failure to comply with the state's procedural rules and prejudice.  The procedural bar issue should ordinarily be resolved first, but it need not be.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits").  Considerations of judicial economy may counsel addressing the merits when they are easily resolvable against the habeas petitioner and the procedural bar issue is complicated. *Hudson,* 351 F.3d at 215; see *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (proceeding to consider merits of procedurally defaulted claims where cause and prejudice analysis "adds nothing but complexity to the case").  Judicial economy will be served by adjudicating the claims in this Petition on the merits.

### A. Ineffective Assistance of Trial Counsel

Petitioner says trial counsel was constitutionally ineffective, in violation of the Sixth Amendment, for: (1) failing to object to consolidation of his trial with that of his wife, codefendant Gail Kimbrough-Johnson, (2) waiving a jury trial, opening statement and two police witnesses, (3) failing to admit into evidence the affidavit of codefendant Gail Kimbrough-Johnson, (4) an inadequate closing argument, and (5) failing to object to the admission of Petitioner's prior conviction for purposes of the charge of felon in possession of a firearm.  Each of these claims was rejected on the merits, either by the Michigan Court

of Appeals on Petitioner's direct appeal or by the trial court on Petitioner's motion for relief from judgment. Accordingly, habeas relief is available only if the Michigan court's rejection of Petitioner's claim was unreasonable under clearly established United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); 28 U.S.C. § 2254(d).

Claims of ineffective assistance of counsel are governed by the standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, an ineffective assistance of counsel claim has two components. First, the petitioner must show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, a petitioner must also show that the deficient performance prejudiced the defense. *Id.* In order to establish prejudice, the petitioner must show that the identified errors were so serious that they deprived the petitioner of a fair trial. *Id.* The burden is on the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Id.*

When a state court considers and rejects a claim of ineffective assistance of counsel on the merits, a federal habeas court must apply a doubly deferential standard when deciding whether a state court application of *Strickland* is unreasonable for purposes of AEDPA. *Harrington v. Richter,* ___ U.S. ___, 131 S. Ct. 770, 786 (2011). The court must determine "what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those

7

arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 131 S. Ct. at 786.

Petitioner fails to meet the extremely high burden to show that the Michigan courts unreasonably applied the *Strickland* standard in rejecting this claim of ineffective assistance of trial counsel.   The Court will briefly address each of Petitioner's claims.

     1.   Failure to seek severance

Petitioner asserted in his direct appeal that his trial counsel was ineffective because he did not seek to have Petitioner's trial severed from that of his codefendant wife.   The Michigan Court of Appeals rejected this claim on the merits.

> Severance of a trial is only required when codefendants present "mutually exclusive" or "irreconcilable" defenses. *People v. Hana*, 447 Mich. 325, 349 (1994); see also MCR 6.121(C). There must be a tension so great between the two defenses that a jury would have to believe one defendant at the expense of the other. *Hana, supra.* In the present case, there was no indication that "mutually exclusive" or "irreconcilable" defenses were to be presented. Prior to trial, it was believed that the codefendant wife would absolve defendant of any participation in an intentional shooting. However, at trial, the codefendant wife refused to testify to the circumstances underlying the shooting. Although counsel may or may not have contemplated that there would be a change in circumstances, observations made with the benefit of hindsight cannot form the basis of an ineffective assistance of counsel claim. *People v. Hill*, 257 Mich.App 126, 139 (2003).

*People v. Johnson,*  2004 WL 1737685 at *1.

The holding of the Michigan Court of Appeals is neither contrary to nor an unreasonable application of *Strickland*.  The *Strickland* standard requires the court to review the actions of trial counsel from counsel's perspective at the time.   *Strickland,* 466 U.S. at 689.  "[E]very effort [must] be made to eliminate the distorting effects of hindsight [and] to evaluate the conduct from counsel's perspective at the time." *Id.*

The record supports the Michigan court holding that there was no indication prior to trial that inconsistent defenses would be offered. The Kimbrough-Johnson affidavit, discussed in further detail below, suggests that the shooting was an accident. Petitioner's initial theory of defense was that the shooting was accidental and Petitioner's testimony on direct examination was consistent with a defense of accident for both defendants. On cross-examination, however, Petitioner seemed to attribute greater culpability to his codefendant. Petitioner testified on cross-examination that his codefendant pointed the gun at the victim and that he grabbed her wrist to prevent her from shooting the victim. Petitioner's testimony seemed to surprise codefendant's counsel, who stated that he had advised his client not to testify "especially the direction the case has gone in, I don't think she should. I have advised her not to testify." There is nothing in the record prior to Petitioner's testimony that suggests that Petitioner's counsel should have been aware that the Petitioner and codefendant had inconsistent defenses. Judging counsel's conduct from his perspective at the time the trials were joined, as required by *Strickland*, the Michigan courts correctly found that trial counsel was not ineffective for failing to seek severance.

Petitioner argues that the inconsistency of defenses is further shown by statements made by Kimbrough-Johnson at her sentencing. She said Petitioner was the shooter, she did not know that her husband was going to fire, she was mortified by the entire event, her affidavit to the contrary was untrue, and Petitioner pressured her to sign it.

These arguments do not assist Petitioner in his argument of ineffective assistance of counsel for failing to seek severance; nothing in the record suggests that Petitioner's attorney was aware or should have been aware at the time the cases were joined, that Kimbrough-

9

Johnson would make these statements at sentencing. Under *Strickland*, an attorney's conduct is evaluated at the time of the actions alleged to be deficient, not in hindsight.

    2.  <u>Waiving a jury trial, opening statement and two police witnesses</u>

Petitioner says his counsel was ineffective for advising Petitioner to waive his right to a jury trial, for waiving an opening statement, and for waiving the prosecution's production of two police officer witnesses. Each of these claims was rejected on the merits, either on Petitioner's direct appeal or on Petitioner's motion for relief from judgment; the Michigan courts found that the actions fell within the realm of reasonable trial strategy.

On direct appeal, Petitioner claimed that his counsel was ineffective because he waived his right to a jury trial, opening statement and the prosecution's production of two police witnesses for the sake of expediency rather than in his client's best interests. The Michigan Court of Appeals held that Petitioner failed to meet his burden to show that this advice was deficient:

> With regard to the remaining claims of ineffective assistance, defendant failed to meet his burden of proof. *Harmon, supra.* Defendant expressly waived his right to a jury trial, and such a decision is a matter of trial strategy. *People v. Johnson* (On Rehearing), 208 Mich. App 137, 142 (1994).

*People v. Johnson*, 2004 WL 1737685 at *2.

In his motion for relief from judgment, Petitioner argued that Petitioner's trial counsel advised him to waive his right to a jury trial in order to obtain a "jury trial waiver break," contrary to Michigan public policy. The trial court rejected Petitioner's arguments as follows:

> Firstly, Defendant argues that he was denied effective assistance of counsel due to the advice his trial counsel gave him in regards to a waiver of a jury trial. After reviewing the record, this Court has determined that a requested evidentiary hearing is not

required for a decision on this issue.  MCR 6.508(B).  The decision to waive the right to trial by jury ultimately belongs to the defendant.  MCR 6.402(B).  The record reveals that it was Defendant who ultimately made the decision to waive a jury trial.  Even if this Court assumes that Defendant relied on his counsel's recommendations when making this decision, this Court will neither substitute its judgment for counsel's judgment regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight.  *People v. Rice* (On Remand), 235 Mich. App. 429 (1999).  "A defense attorney must enjoy great discretion in the trying of a case - especially with regard to trial strategy and tactics."  *People v. Pickens*, 446 Mich. at 330.  According to Defendant's own sworn affidavit, trial counsel cited trial counsel's favorable impression of this Court's fairness in sentencing when recommending to Defendant that Defendant choose a bench trial in order to allow his case to be brought before this Court.  In Defendant's own words: "Attorney O'Meara told me that he did not want to try my case in front of another judge because in the event he lost the trial, Judge Drake would not impose a harsh sentence and I should attempt to keep Judge Drake and waive my right to a jury trial."  Also according to Defendant, trial counsel asked Defendant to consider whether Defendant "wanted to take a chance on a jury composed of a bunch of white people from the suburbs."  These statements, taken from the affidavit Defendant attached to his Motion, clearly establish that trial counsel's advice clearly constitutes matters of trial strategy.

As for Defendant's allegations concerning trial counsel's alleged remark concerning jury trial "waiver breaks," Defendant needs more than his mere allegation that counsel spoke a single sentence over three-and-a-half years ago that may have led Defendant to believe that he would receive a lesser sentence if he agreed to a bench trial, such as a signed affidavit from trial counsel, to persuade the Court to grant even an evidentiary hearing on this issue at this point.  The burden rests with Defendant to establish his claim under subchapter 6.500, and this Court holds that Defendant has not met his burden.  Furthermore, Defendant has failed to make a sufficient showing that because of counsel's alleged statement Defendant suffered prejudice.  Defendant has not shown that had counsel not made the alleged statement Defendant would not have chosen to waive his right to a jury trial, nor has Defendant shown that the outcome of a jury trial would have differed from the outcome of a bench trial.

To establish that his counsel was constitutionally ineffective in advising him to waive his right to a jury, Petitioner must establish both that the advice was deficient and that it resulted in prejudice.  *Strickland*, 466 U.S. at 687.  To establish prejudice, Petitioner must show that the result of a jury trial would have been different.  *Brown v. Pitcher*, 19 Fed. Appx. 154, 158 (6th Cir. 2001).

Petitioner does not establish that his counsel was constitutionally ineffective in advising him to waive his right to a jury trial. An attorney's advice to his client to waive his right to a jury is "a classic example of a strategic trial judgment." *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995) (overruled on other grounds by *Daniels v. United States,* 254 F.3d 1180, 1188 n.1 (10th Cir. 2001)). The trial court engaged both defendants in the appropriate colloquy and the record supports the trial court's holding that their waivers were knowing and voluntary. Petitioner's counsel did not misstate the law or guarantee a result. *See Sowell v. Bradshaw*, 372 F.3d 821, 838 (6th Cir. 2004) (counsel's advice to take calculated risk for bench trial not deficient where counsel did not misstate the law or guarantee result, but merely had mistaken but reasonable basis for thinking judge would not impose death penalty). Petitioner's counsel could have reasonably believed that a bench trial was a better strategy. Absent evidence to the contrary, Petitioner cannot overcome *Strickland's* strong presumption of competent advice. *See Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003) (attorney's advice to have bench trial not objectively unreasonably where attorney could reasonably have believed that bench trial was a better strategy).[1]

Petitioner also fails to demonstrate that he was prejudiced by his attorney's advice to waive his right to a jury. There was substantial evidence of guilt, including the consistent

---

[1]Petitioner argues that counsel's advice was unprofessional because, according to Petitioner, he suggested that Petitioner should waive a jury trial to avoid being tried by white jurors from the suburbs and because counsel advised Petitioner that in the event of conviction, Judge Drake would not impose a harsh sentence. This argument was not made to the state courts and therefore appears to be defaulted. Furthermore, Petitioner cites no federal case, and the Court is aware of none, for the proposition that such advice is beyond the wide range of professionally competent counsel. To the extent that such advice was imprudent or even unprofessional, the Petitioner cannot show that he was prejudiced by the resulting waiver.

testimony of two eyewitnesses that Petitioner shot the victim.  Petitioner does not establish, or even argue, that a jury trial would have resulted in a different outcome.  There is no evidence that the trial court was biased or unfair, and the conviction was fully supported by the evidence.  The Petitioner cannot "show a 'reasonable probability' that 'the result of the proceedings would have been different' but for his counsel's errors."  *Willis*, 351 F.3d at 746 (where conviction supported by overwhelming evidence and no evidence of bias or unfairness, petitioner failed to establish prejudice) (quoting *Strickland,* 466 U.S. at 694).

As to the waiver of the police witnesses, Petitioner fails to allege how they would have testified and how the failure to present the witnesses prejudiced his case.  As to the waiver of opening argument, Petitioner fails to establish or even argue why the waiver was not a reasonable trial strategy or how he was prejudiced by his counsel waiving an opening statement.[2]  There is nothing in the record to support Petitioner's assertion that counsel acted deficiently in waiving the testimony of police witnesses or in failing to give an opening statement, or to show that Petitioner was in any way prejudiced by counsel's actions.

Petitioner is not entitled to habeas relief on this claim.

### 3.  Failing to successfully admit the affidavit of Gail Kimbrough-Johnson

---

[2]Petitioner argues that an evidentiary hearing should be held on the question of whether counsel was ineffective.  The Supreme Court, however, has recently held that when a claim has been adjudicated on the merits, evidence introduced in a federal court has no bearing on habeas review. *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1400 (2011).  The trial court's opinion rejecting Petitioner's claims of ineffective assistance of counsel constitutes an "adjudication on the merits" for purposes of AEDPA review, even though Petitioner's *Strickland* claims were considered in the context of a procedural default argument. *Cf. Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009) (AEDPA applies to constitutional claim addressed on the merits by state court for purposes of plain error review).

13

Gail Kimbrough-Johnson gave Petitioner a handwritten affidavit dated July 18, 2002. There she says that Valerie Byrd, armed with a red baseball bat, approached her with threats, and that Shira joined Valerie and had a knife.  Kimbrough-Johnson says she reached into her purse and took out a small pistol, that Shira shouted "the bitch" had a gun, and that the Petitioner said "no" and grabbed her wrist.  The affidavit states that the women saw the gun and ran away, that Valerie Byrd "got half way in her driveway and fell to the ground," and that Shira Byrd "turned and said that bitch shot my mother."  Kimbrough-Johnson states she and the Petitioner then drove away.

Petitioner says that his trial counsel was ineffective in failing to get the affidavit admitted into evidence.  He also says he was prejudiced by the exclusion; that the failure of the trial court to admit the affidavit deprived him of a defense.

The trial court rejected this ineffective assistance of counsel claim, holding that Petitioner failed to establish either that the exclusion of the affidavit was erroneous or that he was prejudiced by the court's exclusion of the affidavit.  The court noted that the affidavit does not state that the victim was shot, or that the bullet that shot the victim came from the "small pistol" that affiant claimed she removed from her purse.  The court also noted that "the affiant neither states that the gun was in her possession when the victim was shot nor that the gun was not in the [Petitioner's] possession when the victim was shot."  "In fact" the court notes, "the last time the affiant mentions the gun in her statement is in reference to an apparent struggle that took place between herself and the [Petitioner], prior to the shooting, when [Petitioner] grabbed her wrist after she claimed to have retrieved the gun from her purse."  The court concluded that the affidavit neither establishes the Petitioner's innocence

14

nor corroborate's his story, and that "it is unlikely after a careful evaluation of the evidence presented at trial that this Court, acting as finder of fact, would have decided this case differently had the affidavit been ruled admissible."

The factual findings of the Michigan court are presumed correct on habeas review unless rebutted by clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e). *Cf. Haliym v. Mitchell*, 492 F.3d 680, 700 (6th Cir. 2007) (state supreme court's factual findings made in connection with a state evidentiary issue are binding upon the federal habeas court "absent clear and convincing evidence to the contrary").   While this Court might interpret the affidavit more expansively than the trial court did, the Petitioner fails to establish by clear and convincing evidence that the factual findings of the trial court were erroneous.  The Court is bound by the factual finding of the trial court that the affidavit failed to amount to an admission on the part of the affiant that she shot the victim and that it neither exculpated the Petitioner nor inculpated the affiant.  The Court is also bound by the trial court's finding that the exclusion of the affidavit did not prejudice the defense because it was unlikely that the trial court, as finder of fact, would have decided the case differently had the affidavit been ruled admissible.

This Court may grant relief on the claim of ineffective assistance of counsel only if the holding is an unreasonable application of the *Strickland* standard in light of the evidence in the record.  The *Strickland* standard requires that a Petitioner establish *both* that his counsel acted deficiently and that the error prejudiced the defense.  Here, the Petitioner failed to meet his burden to show that the trial court erred in holding that Petitioner failed to show that he was prejudiced by the failure of his counsel to obtain the admission of codefendant's

15

affidavit.  As prejudice is an essential element of ineffective assistance of counsel, the Petitioner cannot establish ineffective assistance of counsel based on counsel's failure to have the affidavit admitted.

4.  Inadequate Closing Argument

Petitioner says that trial counsel was ineffective  because his closing argument was "internally and externally contradictory," seemed to raise a new defense, and denigrated the Petitioner.  Petitioner argues that counsel's closing statement seemed to alternatively suggest that the gun was in Kimbrough-Johnson's hands and that it was in Petitioner's hands but went off accidentally.  Petitioner also argues that trial counsel undermined his own case  by admitting that Petitioner had motive to lie, that Petitioner's version of events was "entirely self-serving" and that Petitioner's claim, that he was a "hero" in grabbing the gun from his wife was "preposterous."  Petitioner asserts that his trial counsel acted in an objectively unreasonable manner by making such statements.

Upon review of the record, the Court finds that the Michigan court did not unreasonably apply *Strickland* in rejecting Petitioner's ineffective assistance of counsel claim based upon the closing statement.  Petitioner's counsel did appear to change his theory of defense in his closing statement from a defense of accident to a defense of reasonable doubt.  Changing a theory of the defense in a closing statement is reasonable when the testimony at trial develops in a manner that was not reasonably foreseen by defense counsel.  Kimbrough-Johnson's refusal to testify weakened the claim of accident to the point that it was within reasonable trial strategy to argue reasonable doubt rather than accident.  Petitioner's counsel's argued reasonably that none of the witnesses was credible, including his client, and that reasonable

doubt existed based on the conflicts alone. The acknowledgment of the flaws in the Petitioner's testimony and his motive to lie was within the realm of reasonable trial strategy, particularly in the context of a bench trial. Petitioner fails to show that the Michigan courts unreasonably applied Supreme Court precedent in rejecting Petitioner's claim of ineffective assistance of counsel based upon trial counsel's closing statement.

5.  Failing to object to the admission of Petitioner's prior conviction

Petitioner says that trial counsel was ineffective for failing to object to the admission into evidence of Petitioner's prior conviction for assault with intent to cause grave bodily harm, for the purpose of the charge of felon in possession of a firearm. The Michigan Court of Appeals rejected this claim, holding that the Petitioner failed to establish either that the prosecutor committed misconduct or that Petitioner was prejudiced by any improper admission of the prior conviction.

> Moreover, there is no record evidence to support the contention that trial counsel failed to object to prosecutorial misconduct. FN2 *Harmon, supra.* Even if the prosecutor attempted to admit improper propensity or other acts evidence, the evidence was submitted before a bench trial. A judge, sitting as the trier of fact, possesses an understanding of the law, allowing him to ignore errors and decide a case based solely on evidence properly admitted at trial. *People v. Taylor*, 245 Mich.App 293, 305 (2001). Accordingly, this challenge to ineffective assistance based on prosecutorial misconduct is without merit.

> FN2. Before the introduction of testimony at trial, the prosecutor stated that there was a stipulation to admit exhibit one. Exhibit one has not been preserved in the lower court record. However, the prosecutor indicated that it was a certified copy of defendant's conviction for possession with intent to deliver. However, in closing argument, the prosecutor referred to the exhibit, stating that it involved case number 93-7429, a conviction for assault with intent to commit great bodily harm. Defendant's prior conviction record, as delineated in the presentence investigation report (PSIR), includes both a possession conviction and an assault with intent to commit great bodily harm conviction. However, the felony complaint, delineating the habitual offender fourth offense notice, indicates that the case number 93-7429 is a conviction for assault with intent to do great bodily harm. Moreover, the PSIR

provides that case number 93-7429 is for a conviction for assault with intent to commit great bodily harm. Based on the record evidence available, it appears that the prosecutor's initial reference to a possession offense was erroneous, and closing argument accurately reflected the nature of the exhibit.

*People v. Johnson*,  2004 WL 1737685 at *2.

Failure to object to prosecutorial misconduct can amount to ineffective assistance of counsel.  *Hodges v. Hurley*, 426 F.3d 368, 377 (6th Cir. 2005).  In order to establish his claim, Petitioner must establish that prosecutorial misconduct occurred, that his counsel's failure to object to it was deficient, and that the failure prejudiced the defense.  *Kincade v. Wolfenbarger*, 324 Fed. Appx. 482, 493 (6th Cir. 2009).  As discussed below, the Michigan courts correctly held that the prosecutor did not commit misconduct. *See* Section C, *infra.* Counsel is not ineffective for failing to make futile objections.  *Bradley v. Birkett*, 152 Fed. Appx. 468, 479 (6th Cir. 2006).  Habeas relief is not warranted on this claim.

### B. Denial of Right to Present a Defense

Petitioner says in his second claim that the trial court denied him the right to present a defense by refusing to admit the affidavit of his codefendant wife into evidence.  The trial court denied relief on this claim, finding that the affidavit neither inculpated Kimbrough-Johnson nor exculpated the Petitioner, and that it was unlikely to have changed the outcome even if it had been admitted.  The Respondent argues that the trial court did not err in excluding the affidavit; it did not meet the requirements of admission under Michigan Rules of Evidence, and any claim that the trial court did err is non-cognizable.

Errors by a state court in the application of state evidentiary law are, generally speaking, not cognizable on habeas review.  A federal court sitting in habeas review is limited to deciding whether a state court conviction violates the Constitution, laws or treaties of the

18

United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Habeas relief is not available for errors of state law. *Id.* Any claim that the state court violated Michigan law in excluding the affidavit is non-cognizable. *See id.*; *cf. Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (claim that state erred in application of state law regarding admissibility of evidence generally not cognizable on habeas review).

Federal habeas corpus review of evidentiary rulings based on state law is "extremely limited." *Giles v. Schotten,* 449 F.3d 698, 704 (6th Cir. 2006) (quoting *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005)). A federal court may not second-guess a state court's interpretation of its own procedural and evidentiary rules. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). An issue concerning the admissibility of evidence or error in state law does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fair trial. *Estelle*, 502 U.S. at 67-68; *Giles*, 449 F.3d at 704.

Petitioner fails to establish that the trial court violated either Michigan law or clearly established United States Supreme Court precedent in refusing to admit the affidavit. The hearsay affidavit was offered by the Petitioner as a statement against interest under Michigan Rule of Evidence 804(b)(3), which provides that a hearsay statement may be admitted if the declarant is unavailable, and the statement was:

> at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Mich. R. Evid. 804(b)(3).

As discussed above, the trial court reasonably found that the affidavit did not clearly inculpate Kimbrough-Johnson. The record does not establish corroborating circumstances that "clearly indicate" the trustworthiness of the statement, as required by the rule. The affidavit, therefore, does not appear to be admissible as a matter of Michigan law.

Even if the trial court erred in applying the Michigan rule of evidence, the exclusion of Kimbrough-Johnson's affidavit did not deny Petitioner a right to present a defense. In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court held that under certain circumstances a defendant's constitutional rights to present a defense may be violated by the exclusion of hearsay statements by a declarant who admits committing the crime charged to the defendant. The defendant in *Chamber*s was convicted of fatally shooting a police officer, Officer Liberty, during a melee involving 50 or 60 people. Another man present at or in the vicinity of the shooting, Gable McDonald, admitted to shooting Officer Liberty and provided Chambers' attorneys an affidavit stating his culpability. McDonald was then jailed. One month later, at a preliminary hearing, McDonald repudiated his sworn confession and claimed that he had been prevailed upon by acquaintances to falsely admit to the shooting. McDonald was released and Chambers proceeded to trial.

At Chamber's trial, the defense sought to prove that McDonald shot Liberty. In support of this theory, the defense presented the testimony of two persons present at the scene. One of these witnesses, a friend of McDonald, testified that he saw McDonald shoot Liberty. The second witness, a cousin of Liberty, testified that he saw McDonald immediately after the shooting with a pistol in his hand. The defense also called McDonald to the stand and had his sworn confession admitted into evidence. The state cross-examined and elicited from

McDonald that he had repudiated his confession, that he had not shot Liberty, and that he had confessed on the promise that he would not go to jail and would participate in a tort recovery from the town.  The trial court denied the defense the opportunity to impeach McDonald's recantation, citing a state evidentiary rule forbidding a party from  impeaching its own witness.  On hearsay grounds, the trial court also excluded  the testimony of three witnesses, friends of McDonald's, each of whom would have testified that McDonald had admitted to them shortly after the shooting that he had shot Liberty.  Mississippi law did not at the time recognize a exception to the hearsay rule for statements against penal interest.

The Supreme Court held that the refusal of the trial court to permit Chambers to cross-examine McDonald as to his confession, coupled with the refusal of the trial court to permit the defendant to call other witnesses, violated Chamber's right to due process.  The Court held that the exclusion of the hearsay statements, while correct under state evidentiary law, violated the defendants rights:

> The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. First, each of McDonald's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the case-McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each. Third, whatever may be the parameters of the penal-interest rationale, each confession here was in a very real sense self-incriminary and unquestionably against interest. *See United States v. Harris*, 403 U.S. 573, 584 (1971); *Dutton v. Evans*, 400 U.S., at 89. McDonald stood to benefit nothing by disclosing his role in the shooting to any of his three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution. Indeed, after telling Turner of his involvement, he subsequently urged Turner not to 'mess him up.' Finally, if there was any question about the truthfulness of the extrajudicial statements, McDonald was present in the courtroom and was under oath. He could have been cross-examined by the State, and his demeanor and responses

weighed by the jury. *See California v. Green*, 399 U.S. 149 (1970). The availability of McDonald significantly distinguishes this case from the prior Mississippi precedent, *Brown v. State, supra*, and from the Donnelly-type situation, since in both cases the declarant was unavailable at the time of trial.

*Chambers,* 410 U.S. at 300-301 (footnotes omitted).

The Sixth Circuit examined Chambers in *McGuire v. Ohio*, 619 F.3d 623 (6th Cir. 2010). In *McGuire*, the Sixth Circuit applied *Chambers* to a habeas petitioner's claim that his rights were violated when the trial court excluded a statement by the victim's husband to police that he had engaged in anal intercourse with the victim in the days before her death. The Sixth Circuit held that the state courts did not unreasonably apply *Chambers* in excluding the husband's statement because the husband's statement was not unquestionably against the declarant's interest, the statement was not spontaneous but rather in response to police questioning, the statement was not corroborated by other evidence, and the declarant husband had committed suicide and was not available for cross-examination at trial. *McGuire*, 619 F.3d at 629.

Applying *Chambers* to the facts of Petitioner's case demonstrates that Petitioner's right to present a defense was not violated by the exclusion of the Kimbrough-Johnson affidavit. Unlike the statements at issue in *Chambers*, the Kimbrough-Johnson affidavit was not made spontaneously to acquaintances shortly after the shooting, but was instead provided to Petitioner's attorney several months later. Also unlike the statements in *Chambers*, the Kimbrough-Johnson affidavit was not corroborated by any evidence other than the testimony of the defendant himself. Third, the Kimbrough-Johnson affidavit was not unquestionably against the declarant's self-interest. While the statements in the affidavit exculpate the Petitioner, they do not clearly inculpate the declarant. The affiant does not admit that she

shot the victim or intended to shoot the victim.  While the affiant does admit to possessing a gun, there is nothing in the record to suggest that she was disqualified from possessing a gun.  Instead, the affiant states that she had a gun, that she produced it apparently in self defense facing threats by the victim and her daughter, and that the Petitioner grabbed the gun from her, that the victim fell to the ground, and that the victims's daughter made a statement suggesting that the affiant had shot the victim.  The affidavit is as compatible with a defense of accident or self-defense as it is with self-inculpation, and therefore not "unquestionably" against the declarant's self interest.  Furthermore, unlike the proposed witnesses in *Chamber*s who had no discernable interest in lying to benefit Chambers, Kimbrough-Johnson was newly-married to Petitioner at the time the statements were made.  Finally, unlike the declarant in *Chambers,* Kimbrough-Johnson invoked her Fifth Amendment right to remain silent at trial and was, therefore, not available for cross-examination.  The statement excluded by the trial court is similar to the statements of the deceased husband in *McGuire*, which exclusion the Sixth Circuit held did not clearly violate the defendant's right to present a defense.  On the facts of this case, the excluded declaration does not have the "indicia of reliability equivalent to those of the statements in *Chamber*s," *Washington v. Renico*, 455 F.3d 722, 735 (6th Cir. 2006), and its exclusion did not violate Petitioner's right to present a defense.

Even if the trial court violated Petitioner's constitutional rights by excluding the affidavit, the error was harmless.  The right to present a defense is subject to harmless error analysis. *Fleming*, 556 F.3d at 536.  In a habeas corpus proceeding, a trial error is harmless unless the error had a " 'substantial and injurious effect or influence in determining the jury's

23

verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This standard for determining the prejudicial impact of constitutional error in a state-court criminal trial applies whether or not the state appellate court recognized the error and reviewed it for harmlessness. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). A federal habeas court must treat the error as if it had a substantial and injurious effect on the factfinder if the court has a grave doubt and finds itself in virtual equipoise as to the harmlessness of the error. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

Even if a constitutional violation occurred, the violation was harmless in Petitioner's case. The case against Petitioner was extremely strong. The trial judge, who was the trier of fact, heard the testimony of two eyewitnesses, including the victim; they both testified unequivocally that the Petitioner shot the victim. As discussed above, the trial court found in the context of Petitioner's ineffectiveness claim that admission of the affidavit was unlikely to make any difference in the result. Any error in excluding the affidavit was harmless.

### C. Prosecutorial misconduct

Petitioner's third claim for habeas relief is that he was denied his right to a fair trial due to prosecutorial misconduct. Specifically, Petitioner asserts that the prosecutor improperly introduced evidence of Petitioner's prior conviction for assault with intent to cause grave bodily harm. Petitioner asserts that the introduction of such evidence denied him a fair trial.

At the beginning of the trial, the prosecutor represented that the parties stipulated to the admission of Exhibit 1, which the prosecutor represented to the court was a certified copy of a conviction for possession with intent to deliver a controlled substance. During closing argument, however, the prosecutor referred to Exhibit 1 as a certified copy of Petitioner's

24

conviction for assault with intent to commit great bodily harm. Petitioner says that he was denied his constitutional right to a fair trial by the reference to the conviction for assault with intent to commit great bodily harm.

For claims of prosecutorial misconduct that do not implicate a specific constitutional right, "the appropriate standard of review ... is 'the narrow one of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly*, 416 U.S. at 643). A prosecutor's conduct violates due process only where it is so egregious that it renders the entire trial fundamentally unfair. *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).

The Sixth Circuit applies a two-step analysis to determine whether prosecutorial misconduct warrants habeas relief. *Wilson v. Bell*, 368 Fed. Appx. 627, 633 (6th Cir. 2010). The petitioner must demonstrate first, that the prosecutor's conduct was improper. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005). If the court finds the conduct improper, the petitioner must further then demonstrate that it was sufficiently flagrant to warrant reversal. *Id.*

Applying this test to the comments at issue, the Court finds that the Michigan court correctly held both that the prosecutor's conduct was not improper and that it was not sufficiently prejudicial to warrant reversal.

The prosecutor's reference to Petitioner's prior conviction for assault was not improper because it correctly reflected the parties' stipulation. It appears from the record that

25

Petitioner had two prior convictions that could support a felon in possession charge, a conviction for possession with intent to distribute and a conviction for assault with intent to cause grave bodily harm. The Michigan Court of Appeals found that the record showed that the prosecutor misspoke at the beginning of the trial when he said the stipulation was that the prior conviction was for possession. The Court of Appeals also said that the reference to the prior conviction in the prosecutor's closing argument correctly identified the stipulated conviction as Petitioner's conviction for assault with intent to cause grave bodily injury. *People v. Johnson*, 2004 WL 1737685 at *2, n. 2. This finding of fact is binding on this court absent clear and convincing evidence to the contrary, 28 U.S.C. § 2254(e). There is no such evidence. This Court concludes that the prosecutor was not attempting improperly to introduce propensity evidence in his closing by citing Petitioner's prior assault conviction, and that he merely misspoke at the beginning of the trial when he referred to the stipulated prior conviction as the possession conviction.

Even if the comment was improper, the Petitioner fails to establish that it caused him prejudice. The prosecutor referred to the prior conviction in closing argument but did not provide any factual details. The Michigan court correctly noted that the trial was a bench trial, and the trial judge, unlike a jury, has a knowledge of the law that allows her to ignore errors and decide the case solely on the basis of properly admitted evidence. The fact that the trial judge was the trier of fact mitigates any possible prejudice. A judge in a bench trial is presumed to have considered only relevant and admissible evidence in reaching his or her decision. *Brown v. Pitcher*, 19 Fed. Appx. 154, 157 (6th Cir. 2001); *cf. United States v. Joseph*, 781 F.2d 549, 552 (6th Cir. 1986) (presumption in federal criminal bench trial is that

26

improper testimonial evidence given no weight and trial judge considered only properly admitted and relevant evidence in rendering decision). There is nothing in the record to rebut the presumption that the trial judge based her conclusions on the evidence against the Petitioner rather than the fact that Petitioner had previously been convicted of a similar crime.

Petitioner also argues that the admission of evidence of prior convictions for purpose of the felon in possession charge is improper under both Michigan and federal law. This is not true. *Bey*, 500 F.3d at 514 (6th Cir. 2007) (claim that state erred in application of state law generally not cognizable on habeas review). Petitioner cites *Old Chief v. United States*, 519 U.S. 172 (1997), held that a trial court abused its discretion under the federal rules of evidence when it declined an offer by the defendant to concede the element of prior felony conviction for purposes of the federal felon in possession of a firearm statute. But, *Old Chief* does not purport to establish a rule of constitutional law binding on the states.

In sum, Petitioner fails to show that the Michigan courts acted contrary to clearly established United States Supreme Court precedent when they found the prosecutor had not committed misconduct sufficient to violate Petitioner's due process rights to a fair trial. Petitioner is not entitled to habeas relief on his claim.

### D. *Blakely* claim

Petitioner argues that his sentence, calculated according to the Michigan sentencing guidelines, may be unconstitutional in light of the United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

27

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  Petitioner argues that his sentence was calculated by the trial judge in accordance with the Michigan sentencing guidelines, which was therefore determined by judicial fact-finding in violation of *Blakely*.

The Michigan Supreme Court and the United States Court of Appeals for the Sixth Circuit rejected Petitioner's argument and held that Michigan's indeterminate sentencing scheme does not violate *Blakely*.  *See People v. Drohan*, 475 Mich. 140 (2006); *Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010).  While Petitioner argues that *Drohan* was incorrectly decided, this Court is bound by the Sixth Circuit's decision in *Montes*.  Petitioner is not entitled to habeas relief.

### E. Ineffective Assistance of Appellate Counsel

Petitioner says in his fifth claim that he was denied the effective assistance of appellate counsel when his appellate counsel failed to raise the issues raised in Petitioner's motion for relief from judgment.  Petitioner cannot establish ineffective assistance of appellate counsel on this record.  As discussed above, none of the claims asserted in his motion for relief from judgment has merit.  Appellate counsel is not deficient for failing to raise meritless claims. *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010).

### IV. CERTIFICATE OF APPEALABILITY

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In this case, the Court concludes that jurists of reason would not debate the conclusion that the Petition failed to establish any entitlement to habeas relief.  The Court declines to issue Petitioner a certificate of appealability**.**

## V.  ORDER

For the reasons stated, Petitioner's "Petition for Writ of Habeas Corpus" is **DENIED**.

The Court **DECLINES** to issue a certificate of appealability.

**IT IS ORDERED.**

  /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 28, 2011

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 28, 2011. |
| --- |
| s/Linda Vertriest |
| Deputy Clerk |